No. 22-50268

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JESUS ROBELDO AGUILAR

*Defendant-Appellant.*

————————

On Appeal from the United States District Court for the Central
District of California, The Honorable George H. Wu, Presiding.
CR No. 2:21-cr-00113-GW

————————

**APPELLANT'S OPENING BRIEF**

————————

COHEN WILLIAMS LLP
Alyssa D. Bell (Bar No. 287751)
Email: abell@cohen-williams.com
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone:  (213) 232-5160
Facsimile:   (213) 232-5167

*Attorneys for Jesus Robeldo Aguilar*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    PRELIMINARY STATEMENT ................................................................1

II.   QUESTION PRESENTED..................................................................2

III.  JURISDICTIONAL STATEMENT ..........................................................2

IV.   DETENTION STATUS ........................................................................3

V.    STATEMENT OF FACTS ....................................................................3

    A.    Mr. Aguilar's Charged Conduct...............................................3

    B.    Mr. Aguilar's Indictment and Prosecution...........................4

    C.    The Presentence Report................................................5

    D.    Mr. Aguilar's Sentencing Proceedings. ...............................6

VI.   ARGUMENT..................................................................................9

    A.    The appellate waiver in Mr. Aguilar's plea agreement does not bar the instant appeal. ...............................................9

        a.    Standard of review. ...............................................9

        b.    Argument. ...............................................................9

    B.    The district court clearly erred in finding that Mr. Aguilar was ineligible for safety valve relief. ...............................................13

        a.    Standard of review. ...............................................13

        b.    Argument. ...............................................................14

VII.  CONCLUSION................................................................................19

CERTIFICATE OF RELATED CASES .............................................................20

CERTIFICATE OF COMPLIANCE..................................................................21

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*BedRoc Ltd., LLC v. United States*,
  541 U.S. 176 (2004) ................................................................ 15

*McDonald v. Sun Oil Co.*,
  548 F.3d 774 (9th Cir. 2008) ................................................ 15

*United States v. Aguilar-Muniz*,
  156 F.3d 974 (9th Cir. 1998) ................................................ 11

*United States v. Arias-Espinosa*,
  704 F.3d 616 (9th Cir. 2012) ..................................... 9, 10, 11

*United States v. Baptista*,
  738 F. App'x. 384 (9th Cir. 2018) ...................................... 13

*United States v. Buchanan*,
  59 F.3d 914 (9th Cir. 1995) ............................................ 9, 10

*United States v. Chung*,
  851 F. App'x. 28 (9th Cir. 2021) ........................................ 12

*United States v. Felix*,
  561 F.3d 1036 (9th Cir. 2009) ............................................ 11

*United States v. Fernandez*,
  526 F.3d 1247 (9th Cir. 2008) ..................................... 15, 17

*United States v. Ferryman*,
  444 F.3d 1183 (9th Cir. 2006) .................................... *passim*

*United States v. Jacobo Castillo*,
  496 F.3d 947 (9th Cir. 2007) ............................................. 10

*United States v. Jeronimo*,
  398 F.3d 1149 (9th Cir. 2005) ........................................... 10

*United States v. Lopez-Armenta*,
  400 F.3d 1173 (9th Cir. 2005) ........................................... 10

*United States v. Nelson*,
  222 F.3d 545 (9th Cir. 2000) ....................................... 18, 19

*United States v. Rand*,
  758 F. App'x. 596 (9th Cir. 2019) ...................................... 13

*United States v. Real-Hernandez*,
  90 F.3d 356 (9th Cir. 1996) ............................................... 14

*United States v. Smith*,
   175 F.3d 1147 (9th Cir.1999)................................................................. 17

*United States v. Watson*,
   582 F.3d 974 (9th Cir. 2009)................................................................. 9

*United States v. Zavalza-Rodriguez*,
   379 F.3d 1182 (10th Cir. 2004)........................................................ 15, 19

*United States v. Zink*,
   107 F.3d 716 (9th Cir. 1997)................................................................ 11

## **Statutes**

18 U.S.C. § 371 .................................................................................................. 5

18 U.S.C. § 3231 ................................................................................................ 2

18 U.S.C. § 3553(f) ...................................................................................... 6, 14

21 U.S.C. § 841 .................................................................................................. 5

21 U.S.C. § 846 .................................................................................................. 5

28 U.S.C. § 1291 ................................................................................................ 2

## **Rules**

Fed. R. App. P. 32 (a)(7)(C) ............................................................................ 21

U.S.S.G. § 2D1.1(b)(1) .................................................................................... 18

U.S.S.G. § 2D1.1(b)(1), cmt. 11(A) ............................................................... 18

U.S.S.G. § 5C1.2 ......................................................................................... 6, 14

## I.   **PRELIMINARY STATEMENT**

This case presents a single question, but it is one that this Circuit has yet to address: whether a defendant's simultaneous commission of drug and interstate firearms trafficking precludes application of the safety valve.

Defendant-Appellant Jesus Aguilar drove from Washington to California with both drugs and weapons concealed in his vehicle. Mr. Aguilar had purchased the firearms lawfully at the behest of his co-conspirator, for whom he had also agreed to transport drug proceeds and weapons across state lines. At the behest of a second co-conspirator, Mr. Aguilar transported narcotics as well.

Mr. Aguilar neither planned to, nor in fact ever, used the weapons to protect himself or the drugs he carried. The firearms were unloaded, and completely inaccessible to him—they were wrapped in bubble wrap, then wrapped again in plastic wrap, and hidden inside a spare tire beneath the truck he drove. Mr. Aguilar did not possess any ammunition.

The Probation Office concluded, in light of these facts, that Mr. Aguilar qualified for safety valve relief, finding that Mr. Aguilar's drug offense was not "in connection with" his firearms possession. The district court disagreed, finding that Mr. Aguilar's transportation of drug and weapons was part and parcel of the same course of conduct. After concluding that Mr. Aguilar did not qualify for the safety valve, the district court imposed the applicable 120-month mandatory minimum

sentence. The court made clear, however, that a ten-year sentence violated the parsimony principle, and invited Mr. Aguilar to appeal.

The district court's refusal to afford Mr. Aguilar safety valve relief was clear error. By its plain terms, the safety valve's exception applies only where the defendant's drug offense is "linked or associated with" his firearms possession. Here, Mr. Aguilar was no more than a mule or courier and, while he transported cargo that contained both guns and drugs, there was no link or association between the two. They were separate crimes. The safety valve should have applied.

For these, and the reasons discussed herein, this Court should reverse and remand for resentencing.

## II.  **QUESTION PRESENTED**

1. Did the district court err in finding that Mr. Aguilar was ineligible for relief under the Sentencing Guidelines' "safety valve" provision?

## III.  **JURISDICTIONAL STATEMENT**

The district court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

///

///

///

2

## IV.   DETENTION STATUS

Mr. Aguilar is currently in the custody of the Bureau of Prisons, serving the 120-month sentence imposed in this case. His projected release date is May 27, 2031.[1]

## V.   STATEMENT OF FACTS

### A.   Mr. Aguilar's Charged Conduct.

As relevant here, on or about November 26, 2018, Mr. Aguilar and lead defendant Rigoberto Martinez engaged in discussions regarding the transportation and sale of large-scale quantities of cocaine across state lines. (PSR-15.) On Martinez's behalf, Mr. Aguilar agreed to purchase and transport ten kilograms of cocaine from the Central District of California to Washington State. (*Id.*) Mr. Aguilar planned to hide the cocaine in a secret compartment in a spare tire of his vehicle. (*Id.*)

Mr. Aguilar also agreed to use the secret compartment to subsequently transport drug proceeds and firearms back from Washington to California, where he planned to give them to Martinez. (*Id.*) That same day, Mr. Aguilar transported the narcotics from California to Washington, as agreed. (*Id.*)

---

[1] https://www.bop.gov/mobile/find_inmate/index.jsp#inmate_results

On November 27, 2018, Mr. Aguilar met with multiple co-conspirators at Martinez's direction, distributing approximately 10 kilograms of cocaine and receiving approximately $240,160 in return. (*Id.*)

Mr. Aguilar also agreed to meet with another co-conspirator to obtain the firearms that he was to transport for Martinez. (*Id.*) In a phone call with Martinez following that meeting, Mr. Aguilar advised Martinez that an unidentified co-conspirator was sending back a single kilogram of cocaine along with the firearms. (*Id.*)

While driving back to California from Washington, Mr. Aguilar was stopped by officers in Oregon. (PSR-16.) A search of his vehicle yielded $240,160 in drug proceeds, two firearms, two empty magazines, and approximately 1,006.4 grams of cocaine, concealed in a spare tire beneath the truck. (*Id.*)

The firearms were inaccessible to Mr. Aguilar during his journey. Not only were they located beneath the vehicle, they were also wrapped first in bubble wrap, and then again in plastic wrap. (*Id.*) The magazines were unloaded and wrapped separately from the firearms, also in bubble wrap and plastic wrap. (*Id.*) Mr. Aguilar possessed no bullets or ammunition. (*Id.*)

B.    Mr. Aguilar's Indictment and Prosecution.

On March 10, 2021, Mr. Aguilar was named in Counts 1, 11, and 14 through 17 of a 20-Count indictment. (ER-146.)

On January 31, 2022, pursuant to a plea agreement, Mr. Aguilar pled guilty to Counts 1 and 11 of the indictment, which charged him with distributing a controlled substance, in violation of 21 U.S.C. §§ 841, 846, and transporting firearms across state lines, in violation of 18 U.S.C. § 371. (ER-128.) In his plea agreement, Mr. Aguilar acknowledged that he drove from Washington to California in possession of just over one kilogram of cocaine, $240,160 in drug proceeds, two handguns, and two magazines; that he had those items concealed within a spare tire beneath his truck; and, that he intended, when he arrived in California, to give them to Martinez. (ER-135.)

The plea agreement contained a broad waiver of Mr. Aguilar's right to appeal his sentence:

> "Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 120 months imprisonment, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court."

(ER-138.)

C.      The Presentence Report.

On June 6, 2022, the United States Probation Office disclosed its Presentence Report and Sentence Recommendation Letter. Therein, Probation wrote, "[t]he Probation Officer can independently assess that . . . Aguilar did not possess a firearm in connection with the drug distribution offense." (PSR-18; *see*

5

*also* PSR-52 ("The Probation Officer agrees that the guns identified in the offense conduct section do not preclude [Mr. Aguilar's] eligibility for safety valve.").) In a subsequently-filed addendum, Probation set forth the following reasoning:

> In order to be ineligible for safety valve, the firearms must have been possessed in connection with the drug distribution offense. Here, the firearms were wrapped in bubble wrap and then clear plastic wrap. The magazines were unloaded, and wrapped separately from the firearms, also in bubble wrap and plastic wrap. Aguilar did not possess any ammunition. Aguilar would not have any access to the firearms while driving. Given the foregoing, there appears to be insufficient evidence to conclude that the firearms in this case were connected to the drug distribution offense.

(PSR-54.)

D. Mr. Aguilar's Sentencing Proceedings.

During Mr. Aguilar's sentencing proceedings, the parties heavily disputed whether Mr. Aguilar was eligible for "safety valve" relief under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, which would have allowed the district court to sentence Mr. Aguilar below the otherwise-applicable mandatory minimum of 120 months, and to reduce his offense level by two, respectively. (ER-14-15.)

The government took the position "that [Mr. Aguilar's] simultaneous commission of the interstate firearm transportation conspiracy with his codefendant from the drug case preclude[d] application of the safety valve." (ER-37.) Specifically, the government averred that:

> Because of his admission of the conduct in the factual basis, defendant cannot now claim that he is able to prove, even by a preponderance of the evidence, that he did not possess the firearms

in connection with the drug offense . . . [T]he purchases of firearms in
Spokane were tied to his trips to deliver drugs to Spokane. … His
transport of the firearms constituted an additional crime he was
committing with and on behalf of his drug co-conspirator Martinez.
And defendant was further helping Martinez commit a further crime of
illegally possessing a firearm in southern California.

(ER-50.)

The defense countered that, to be eligible for safety valve relief, the

possession of a firearm must be "in connection with the offense," meaning the

possession of firearms should have the potential to facilitate the offense and not be

incidental to it. (ER-64.) Mr. Aguilar's conduct failed to meet this standard, the

defense explained, because:

Aguilar … never used, or threatened to use, violence. He never intimated
any intent to possess firearms in order to protect himself or any contraband,
nor is there any circumstantial evidence to suggest his possession was for
that reason. He had the legal right to purchase the firearms and magazines.
The firearms were unloaded, and Aguilar did not have any
ammunition/bullets with him. Moreover, the firearms and magazines he
purchased were completely inaccessible to him – wrapped in bubble wrap
and hidden inside a spare tire beneath the truck he was driving. And the
record suggests Aguilar purchased the firearms and magazines because a co-
defendant asked him to, and was bringing them back to give to that co-
defendant.

(ER-66.)

The district court ultimately determined that Mr. Aguilar was not eligible for

safety valve because he had failed to established, "by preponderance of the

evidence, that the firearms were not connected with the crime charged," and

imposed the applicable mandatory minimum sentence of 120 months. (ER-15; ER-

25.) The district court made clear that the sole basis for its refusal to apply the safety valve was "the connection of the firearms with the drug crime." (ER-21.) Focusing on the fact that "the purchase of the guns [was] discussed between the defendant and the co-conspirator, and proceeds of the sale of drugs were used to purchase those items," the court concluded that "the handguns were involved in the crime" and were "part and parcel of the same course of conduct." (ER-15; *see also* ER-22 ("[T]his is not a situation where it's two separate incidents . . . This is all part and parcel of the same endeavor.").)

The district court recognized, however, that no Ninth Circuit case applied directly to the facts presented and, despite the appellate waiver included in Mr. Aguilar's plea agreement, invited Mr. Aguilar to appeal its denial of safety valve relief to this Court. (*See* ER-21 ("[I]f the defendant wants to appeal, he has a basis to appeal this issue. Maybe the Ninth Circuit will clarify this area if it needs further clarification.").) The district court even advised Mr. Aguilar as to the specific elements of the safety valve that he should raise in his appeal. (ER-14-15 ("Your proffer is off the table, so therefore, you don't need to raise it on appeal, because … I have indicated to the government insofar as my holding is concerned for purposes of reaching a decision in this matter, I'm treating it if he would be willing to offer, he was always willing to proffer, and there is not an issue in that regard.").) The government, for its part, did not object at any point.

After imposing 120 months of incarceration, the district court made clear that Mr. Aguilar's sentence violates the parsimony principle and that, upon remand from this Court, it would impose a lesser sentence. (*See* ER-25 ("I would not sentence you to 120 months if you met safety valve, but for the reasons I have said, I don't think you do qualify, but there may be an Appellate Court that says I'm wrong, and if that is the case, they will send the case back to be [*sic*], and I will sentence you to 120 months.").)

This appeal follows.

## VI.    ARGUMENT

    A.    <u>The appellate waiver in Mr. Aguilar's plea agreement does not bar the instant appeal</u>.

        *a.  Standard of review.*

This Court reviews *de novo* whether the defendant waived his right to appeal. *United States v. Arias-Espinosa*, 704 F.3d 616, 618 (9th Cir. 2012); *United States v. Watson*, 582 F.3d 974, 981 (9th Cir. 2009) (same).

        *b.  Argument.*

This Court has "held that a district court's clear statement that a defendant has the right to appeal renders unenforceable the defendant's prior waiver of this right in a plea agreement." *Arias-Espinosa*, 704 F.3d at 618. In *United States v. Buchanan*, 59 F.3d 914 (9th Cir. 1995), for example, the defendant pleaded guilty

and agreed to waive his right to appeal if his sentence was within the prescribed Sentencing Guidelines range. *Id.* at 916-18. Months later, when he tried to withdraw his plea because it contained unfavorable stipulations, the district court told the defendant that he could appeal the court's "sentencing findings." *Id*. at 916. The next day, the court sentenced the defendant, and again told him that he had the right to appeal his sentence. *Id*. at 917. On review, the court reasoned that, despite the written waiver, the defendant had a "reasonable expectation" of a right to appeal because of "the district court judge's clear statements at sentencing, the defendant's assertion of understanding, and the prosecution's failure to object." *Id*. at 917-18.

"Since *Buchanan*, when a district court makes statements that contradict a defendant's prior waiver of his right to appeal," this Court has "focused on both the court's statement and the defendant's reasonable expectations about his rights." *Arias-Espinosa*, 704 F.3d at 618; *see also United States v. Lopez-Armenta*, 400 F.3d 1173, 1176 (9th Cir. 2005).

Accordingly, in reviewing whether a waiver should be enforced, this Court examines whether the district court's advice about a right to appeal was "unambiguous," *Lopez-Armenta*, 400 F.3d at 1176, and "without qualification," *United States v. Jeronimo*, 398 F.3d 1149, 1154 (9th Cir. 2005), *overruled on other grounds by United States v. Jacobo Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (en

banc). *Compare Arias-Espinosa*, 704 F.3d at 618-19 (holding that the statement

"you *may* have a right to appeal" did not affect the waiver (emphasis added)), and

*United States v. Aguilar-Muniz*, 156 F.3d 974, 977 (9th Cir. 1998) (holding that the

statement "if you *believe* the waiver is unenforceable, you can present that theory

to the appellate court" did not affect the waiver (emphasis added)) *with United*

*States v. Felix*, 561 F.3d 1036, 1041 n.5 (9th Cir. 2009) (holding that appellate

waiver was unenforceable where the defendant's counsel and the district court both

stated that the defendant had the right to appeal and the prosecutor did not object)

and *United States v. Zink*, 107 F.3d 716, 718 (9th Cir. 1997) (holding that appellate

waiver was unenforceable where "the district court advised Zink that he had the

right to appeal from the judgment of this court.") (internal quotation omitted).

Here, at the sentencing hearing, the district court advised Mr. Aguilar as

follows: "if the defendant wants to appeal, he has a basis to appeal [the safety

valve] issue. Maybe the Ninth Circuit will clarify this area if it needs further

clarification." (ER-21.) This was a clear and unambiguous statement that Mr.

Aguilar's appellate waiver did not bar his appeal on the discrete issue of the

application of the safety valve to his case. Indeed, the district court went so far as

to advise Mr. Aguilar as to the specific elements of the safety valve that he should

raise in his appeal. (ER-21-22 ("Your proffer is off the table, so therefore, you

don't need to raise it on appeal, because … I have indicated to the government

insofar as my holding is concerned for purposes of reaching a decision in this matter, I'm treating it if he would be willing to offer, he was always willing to proffer, and there is not an issue in that regard.").) Moreover, after imposing a 120-month sentence, the district court made clear that such a sentence violated the parsimony principle, that the court would not have imposed it but for the applicable mandatory minimum, and that the court would impose a lesser sentence if Mr. Aguilar's appeal were to be successful. (*See* ER-25 ("I would not sentence you to 120 months if you met safety valve, but for the reasons I have said, I don't think you do qualify, but there may be an Appellate Court that says I'm wrong, and if that is the case, they will send the case back to be [*sic*], and I will sentence you to 120 months."); ER-29 ("…if it is determined that he does qualify for safety valve, it gets sent back to me anyway ….").) The government, for its part, did not object at any point.

Because the district court advised Mr. Aguilar, in clear and unambiguous terms, that he retained the right to appeal the denial of safety valve relief, Mr. Aguilar's appellate waiver is unenforceable. *See United States v. Chung*, 851 F. App'x. 28, 30 (9th Cir. 2021) (unpub.) ("In his plea agreement, Chung knowingly and voluntarily waived his right to appeal the within the Guidelines sentence imposed by the district judge. However, based on a misreading of that agreement, the district judge unequivocally told Chung that he had a right to appeal the issues

he now raises before us and the government did not object. Under these circumstances, we will not enforce the waiver."); *United States v. Rand*, 758 F. App'x. 596, 597-98 (9th Cir. 2019) (unpub.) ("The appellate waiver in Rand's plea agreement does not preclude consideration of the merits of his appeal. The government concedes that Rand may appeal his sentence for Count One. We hold he also may appeal his sentence for Count Two… [T]he district court told Rand that he could appeal his sentence, rendering unenforceable any waiver."); *United States v. Baptista*, 738 F. App'x. 384, 386 (9th Cir. 2018) (unpub.) ("We conclude that Baptista's waiver became unenforceable when the district judge advised him, 'without qualification, that he ... [had] a right to appeal.' At Baptista's sentencing hearing, the district court stated, '[I]f you wish to appeal, you must do so within 14—within days [sic].' This 'unambiguous' statement gave Baptista a 'reasonable expectation' of his right to appeal.") (citations omitted, alterations in original).

This Court may therefore consider the merits of Mr. Aguilar's appeal.

B.    <u>The district court clearly erred in finding that Mr. Aguilar was ineligible for safety valve relief</u>.

  a.    *Standard of review.*

This Court "reviews for clear error the district court's factual determination that a defendant possessed firearms in connection with the offense of conviction, making him ineligible for safety valve relief." *United States v. Ferryman*, 444 F.3d

1183, 1185-86 (9th Cir. 2006); *United States v. Real-Hernandez*, 90 F.3d 356, 360 (9th Cir. 1996).

      *b.  Argument*.

      18 U.S.C. § 3553(f) provides the statutory basis for safety valve relief from mandatory minimum sentences. It states that, if each of its criteria are met, "the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission … without regard to any statutory minimum sentence…." 18 U.S.C. § 3553(f). These criteria are: (1) the defendant does not have more than one criminal history point; (2) the defendant did not use violence or possess a firearm in connection with the offense; (3) the offense did not result in death or serious bodily injury to a person; (4) the defendant was not a leader in the offense and was not engaged in a continuing criminal enterprise; and (5) the defendant has truthfully provided to the Government all information and evidence that he has concerning the offense. *See* 18 U.S.C. § 3553(f); *see also* U.S.S.G. § 5C1.2 (implementing 18 U.S.C. § 3553(f)).

      Only the second criterion, whether Mr. Aguilar possessed a firearm in connection with the offense, is at issue in this appeal. "To qualify for safety valve relief under U.S.S.G. § 5C1.2, the burden is … on the defendant to prove, … by a preponderance of the evidence, that he did not possess a firearm in connection with the offense." *Ferryman*, 444 F.3d at 1186. The phrase "in connection with" is not

defined in the statute or correlating Sentencing Guideline. Typically, therefore, courts conduct a fact-bound and contextual inquiry, focusing on details like "the circumstances in which the firearms were found," the "implausibility of the defendants' explanations" for how the guns were unconnected to the drugs, or the types or quantity of weapons possessed. *Id.*; *see also United States v. Fernandez*, 526 F.3d 1247, 1252 (9th Cir. 2008) (same). Courts have described "in connection with," for purposes of safety valve eligibility, as involving a "close connection linking the individual defendant, the weapon and the [drug] offense." *United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1187 (10th Cir. 2004).

Although the safety-valve inquiry is inherently fact-bound, Mr. Aguilar's case presents a threshold question of statutory interpretation. What does "in connection with" mean? The answer derives from the plain meaning of the statutory text. *See McDonald v. Sun Oil Co*., 548 F.3d 774, 780 (9th Cir. 2008) ("The preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (internal quotation marks omitted)).

The Oxford Languages English Dictionary defines "connection" as "a relationship in which a person, thing, or idea is linked or associated with something

else."[2] The Court must determine, therefore, whether the facts of Mr. Aguilar's offense conduct give rise to an inference that his drug offense was "linked or associated" with his firearms possession. The simple answer is no, and the district court's contrary finding was clearly erroneous.

Mr. Aguilar transported cocaine to Washington for Martinez, and returned with weapons and drug proceeds at Martinez's behest. The drugs that officers discovered in Mr. Aguilar's spare tire together with the weapons were a late addition at the behest of an unindicated co-conspirator, and the proximity of the drugs and weapons was merely incidental. Indeed, Mr. Aguilar's role in the drug conspiracy was that of mule or courier, and the fact that he carried both drugs and guns on the day of his apprehension was pure coincidence.

The additional facts and circumstances attendant to Mr. Aguilar's offense underscore this conclusion. Mr. Aguilar did not use the firearms for protection from the dangers of the drug trade. He could not plausibly have done so, since the weapons were unloaded, wrapped in bubble wrap and then plastic wrap, and hidden in a compartment below his vehicle, far out of reach. It is for this reason that the Probation Department concluded that Mr. Aguilar was eligible for safety valve relief.

---

[2] *See* https://languages.oup.com/google-dictionary-en/ (last visited May 5, 2023).

Mr. Aguilar did not, moreover, proffer an implausible explanation for the guns' use – he admitted that he transported both the guns and drugs across state lines, but explained that he neither used, nor planned to use, the firearms at all. This explanation was consistent with their storage in the hidden compartment of his vehicle. *Cf. Fernandez*, 526 F.3d at 1252 ("[T]he guns found in Fernandez's residence were far from the kind or quantity associated with family protection; they included, as noted, not just a revolver, but two rifles and two protective vests. While Fernandez may simply have sought to overwhelm any would-be burglar in steadfast devotion to his kindred's welfare, we are satisfied the district court did not clearly err in deeming such explanation implausible."); *Ferryman*, 444 F.3d at 1186-87 (rejecting the defendant's explanation that eleven firearms found in his residence, six of which were loaded, were for his family's protection); *United States v. Smith*, 175 F.3d 1147, 1148-49 (9th Cir.1999) (rejecting the defendant's explanation that a gun found in his backpack was not connected to his marijuana garden but instead was used to shoot snakes, where the "nature of the gun was more in the form of a potential weapon than it was … a sporting type of gun") (internal quotation marks omitted).

The facts and circumstances of Mr. Aguilar's offense conduct thus bely any notion that his commission of drug trafficking was "linked or associated" with his

firearms possession, and the district court's overly broad interpretation of the safety valve provision effectively rendered its exception meaningless.

The statutory scheme further underscores this conclusion. Courts often compare the safety valve provision to U.S.S.G. § 2D1.1(b)(1), which authorizes a two-level enhancement to a defendant's offense level if "a dangerous weapon (including a firearm) was possessed." Although they share somewhat similar language, sections 2D1.1(b)(1) and 5C1.2(a)(2) have different burdens of proof. To avoid the enhancement under section 2D1.1(b)(1), the defendant must prove it is "clearly improbable" he possessed a firearm in connection with the offense. *See id*., cmt. 11(A) ("The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."). But with respect to the safety valve, the defendant need only show by a preponderance of the evidence that he did not possess a firearm in connection with the offense. *See Ferryman*, 444 F.3d at 1186; *United States v. Nelson*, 222 F.3d 545, 550 (9th Cir. 2000). Therefore, the standard for thwarting the weapon-possession enhancement is generally higher for a criminal defendant – it is possible to possess a firearm for purposes of the enhancement under U.S.S.G. § 2D1.1(b)(1) but not "in connection with" a drug offense for purposes of safety valve relief. *See Nelson*, 222 F.3d at 551; *Zavalza-Rodriguez*, 379 F.3d at 1188 ("The scope of

activity covered by § 2D1.1 is broader than the scope of activity covered by § 5C1.2.").

    If the safety valve is meant to reach less activity than section 2D1.1(b)(1), it must encompass something more than mere possession of guns and drugs during a single course of conduct. Yet that is precisely why the district court found Mr. Aguilar to be ineligible for safety valve relief here. (ER-15 ("I don't see how the Court could not find that the drugs – I mean, the handguns were involved in the crime. It was part and parcel of the same course of conduct.").)

    In sum, both the statute's plain text and the surrounding statutory scheme compel the conclusion that the safety valve applies to Mr. Aguilar's case. The district court therefore clearly erred in finding him ineligible for safety valve relief, and his sentence should be vacated.

## VII.   <u>CONCLUSION</u>

    For the reasons stated herein, the Court should vacate Mr. Aguilar's sentence and remand for resentencing forthwith.

Dated:  June 20, 2023         **COHEN WILLIAMS LLP**

By:     */s/ Alyssa D. Bell*
        Alyssa D. Bell
        Attorneys for Jesus Robeldo Aguilar

## <u>CERTIFICATE OF RELATED CASES</u>

To the best of Appellant's knowledge, there are no related cases pending before this Court.

Dated:  June 20, 2023        **COHEN WILLIAMS LLP**


By:      *_/s/ Alyssa D. Bell_*
          Alyssa D. Bell
          Attorneys for Jesus Robeldo Aguilar

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32 (a)(7)(C) and Ninth Circuit Rule 32-1, I certify that this opening brief is proportionally spaced, has a typeface of 14 points and contains approximately 4,378 words.

Dated:  June 20, 2023                    **COHEN WILLIAMS LLP**


By:    */s/ Alyssa D. Bell*
                     Alyssa D. Bell
                     Attorneys for Jesus Robeldo Aguilar